PEATROSS, J.
hln these consolidated cases, the trial court ordered specific performance of an agreement by John Turner (“John”) to sell two acres of land (“the property”) to Laura Kelly Hancock (“Laura”). John appeals. For the reasons stated herein, we affirm.

FACTS

Laura was a longtime friend of Fern Turner (“Fern”), who was married to John during the time the events pertinent to this matter occurred. Through this friendship with Fern, Laura met John and the three maintained a friendship for many years. During those years, John’s health deteriorated and, according to the testimony of Fern, she was interested in having Laura live near them for support and help in caring for John. At the time, John’s son, Don, was living in a mobile home on a 2-acre portion of a larger 20-acre tract of land owned by John. Laura testified that she expressed an interest in purchasing the 2-acre mobile home site if Don ever moved. A short time later, Don and his wife moved their mobile home to another site and Laura and John executed the agreement for John to convey and Laura *832 to purchase the 2-acre tract that is at issue in this appeal.
Laura contacted a notary, Barbara Bas-more, and requested that she draft a document to memorialize the agreement of the parties to buy and sell the property. Ms. Basmore testified that she did not have a legal description of the property, but she did her best to draft a document that would suffice as an agreement to sell the 2-acre tract. The resulting document, entitled “Affidavit,” was executed on April 30, 2003, and was signed by Laura, John and two witnesses and a notary. The Affidavit states that Laura “has agreed |2to pay $2,000.00 for two acers (sic) of land in an undivided tract of land owned by John M. Turner.” At the time of execution of the Affidavit, Laura gave John a check for $2,000. The check was made payable to John and Fern and was deposited into a joint checking account owned by John and Fern. Fern testified that the money was used for general living expenses for both her and John. At no time was the $2,000 refunded to Laura. The Affidavit further states that, at a “later date,” the land would be properly surveyed and a deed executed.
Significantly, within a couple of weeks of execution of the Affidavit, Laura moved a mobile home onto the property, connected it to the existing utilities and began living in the mobile home. Laura testified that John and Fern visited Laura at her home on more than one occasion and there was never any opposition to her living there. This was confirmed by the testimony of Fern.
In accordance with the Affidavit, Laura had the parcel surveyed by James W. Braswell and Associates in November 2003. John, however, refused to execute a deed to the property. Instead, John issued a “notice of eviction” to Laura in January 2004. Laura then filed suit for specific performance and the actions were consolidated. John argued that the description in the document was insufficient to support the sale and, alternatively, that the price was lesionary. Laura then filed an amended petition arguing alternatively that, in the event the sale was deemed invalid, she was entitled to recovery of the purchase price and expenses incurred based on her detrimental reliance on the terms of the Affidavit.
|RAs previously stated, the trial court held that the Affidavit was valid and ordered specific performance of the sale. The trial court found that, with all the evidence adduced, including testimony and the survey, there was no confusion as to the exact property that was intended to be sold to Laura. In doing so, the court found the testimony of Laura and Fern to be credible along with the testimony of the witnesses to the signing of the agreement. The trial court then rejected John’s alternative argument of lesion. In reaching this conclusion, the court found that an appraisal submitted by John to support his lesion argument was remote in time and that, in fact, the pertinent two acres were not included in the appraisal. This appeal ensued.

DISCUSSION

La. C.C. art. 2462 allows for specific performance of a contract to sell immov-ables when the agreement is in writing, signed by the parties and specifies the thing and price. This case turns on how specific the description of the property must be and whether parol evidence is admissible to make the determination. Review of the jurisprudence confirms that such determinations are very fact intensive and each case must be scrutinized and determined on its specific facts.
*833 In City Bank and Trust of Shreveport v. Scott, 575 So.2d 872 (La.App. 2d Cir.1991), this court explained:
When the law requires a contract to be in written form, the contract may not be proved by testimony ... unless the written instrument has been destroyed, lost, or stolen. CC Art. 1832. Revision Comments-1984 state that Art. 1832 is new, but does not change the law, the principles and substance of | ¿which are derived from former CC Arts. 2275, 2278(4), 2279 and 2280.
This court has noted that there are cases in which parol or extrinsic evidence may be admitted to aid and identify immovable property described in a written contract to sell. Parol evidence has not been allowed, however, to wholly identify the immovable. Parol has been allowed only where the courts have found that there was “sufficient body” in the initial written description so as to leave the title to immovable property “resting substantially on writing and not essentially on parol.” Jackson v. Harris, 18 La.App. 484, 136 So. 166, 169 (La.App. 2d Cir.1931).
The rule in Louisiana finds its origin in the case of Kernan v. Baham, 45 La. Ann. 799, 13 So. 155 (1893), and was restated in City Bank, supra:
To aid and establish identity of a defective or ambiguous description of an immovable property in a written contract, parol evidence is admissible only where the written, but defective, description distinguishes the property from other properties so as to allow the conclusion that the mutual or common intent of the parties to the writing was to deal with the particular property and not another property of the same kind or quantity.
Further, there should be sufficient substance in the written description in question so as to leave title to the immovable resting substantially on the contents of the writing and not on parol evidence. City Bank, supra.
In City Bank, the court held that the description of “vacant land, 21 acres, Gilliam, Louisiana,” was too general to support the admission of parol evidence to establish what land was the object of the agreement. The court in City Bank provided a thorough and instructive discussion of the line of cases examining the sufficiency of descriptions of immovable property contained in agreements to sell. In its reasons for holding that parol was not admissible in City Bank, the court identified factors that, if present, support the reliance on parol to aid in the determination of the immovable property Rat issue. Most significant to the present case is allowing the prospective purchaser to take possession of the property.[1]
In addition, in Wilson v. Head, 97-922 (La.App. 3d Cir.2/4/98), 707 So.2d 127, at issue was a buy-sell agreement describing the subject property as “the property located at Municipal Address: ., City Many, Parish Sabine, Louisiana, Legal description 4.87 acres on Hwy 6, see attached plat....” The Wilson court reviewed City Bank and allowed ex *834 trinsic evidence to further describe the property intended to be sold, stating that “[w]hile not entirely clear, this description is sufficient to allow the conclusion that the mutual or common intent of the parties to the writing was to deal with the particular property....”
After reviewing the discussion and cases cited in City Bank, we find the facts presented in the case sub judice to be distinguishable from the facts of City Bank and other cases which held that par-ol evidence was not admissible to aid in the description of immovable property. In that regard, we find that several facts in the instant case support the admission of parol evidence to further define the property. First, the Affidavit provided a means for exact identification of the 2-acre parcel, expressly stating that a survey would be conducted to provide the legal description. The survey was completed and the record contains testimony that John’s son was | ^present during the survey and was aware of the boundary lines. In addition, there is testimony that John was shown the survey flags and at no time did he verbalize any complaint or disagreement with the survey. Second, shortly after Don and his wife moved off of the 2-acre tract, in mid-May 2003, Laura moved her mobile home onto the property and peacefully possessed the property until January 2004. In addition, Laura hooked up to the existing water and utility sources with no objection from John. Significantly, this is the only 2-acre mobile home site owned by John. There is no evidence that John attempted to have her removed from the property or require that she pay any rent for the property. In fact, John visited Laura at her home on the property on more than one occasion. In this regard, we note that it is significant that the $2,000 purchase price was paid by Laura to John and Fern and was never refunded. Finally, we find it very significant that the trial court found credibility in the testimony of Laura and Fern and that all parties were aware of the agreement to sell the property described in the Affidavit prior to the execution of the Affidavit. We accord great deference to the credibility determinations of the trial court in this case.
In summary, based on the specific facts of this case, we agree with the trial court that parol evidence was admissible to aid in description of the property contained in the Affidavit. The evidence in this case clearly supports the conclusion that the 2-acre mobile home site surveyed and occupied by Laura was the parcel contemplated in the agreement to sell executed by John and Laura.
| .¡Finally, on the issue and claim of lesion, we are unpersuaded by the alternative argument advanced by John that the sales price of $2,000 was lesionary. The trial court properly viewed the appraisal as too remote in time to provide a fair market value as of the time of the execution of the Affidavit. Furthermore, we agree with the trial court that the appraisal only values the remaining acreage after the 2-acre parcel was culled and does not provide any value for the actual acreage at issue. We, therefore, find no error in the trial court’s refusal of the claim of lesion asserted by John.

CONCLUSION

For the foregoing reasons, the judgment of the trial court ordering specific performance of the agreement to sell and dismissing the claim of eviction is affirmed at the cost of Appellant, John M. Turner.
AFFIRMED.

. See, e.g., Tullis v. Aertker, 352 So.2d 415 (La.App. 3d Cir. 1977), wherein the court enforced specific performance on a written receipt for $100 "Down Payment House Esler Field, Bal 13 months @ $45.00, Unpaid Balance $6150.00, $55.00 Per Mo” and where the defendants placed and allowed the plaintiff to remain in possession of the house and accepted $45 monthly payments from her for 12 years. See also Sexton v. Waggoner, 66 So.2d 634 (La.App. 2d Cir. 1953), wherein the court allowed parol evidence to identify five acres as being in the form of a square where there was a verbal sale to the plaintiff of "five acres located in the SE corner of the SW quarter of the SW quarter, Section 27, Township 23 N, Range 9 W” and the defendant allowed the plaintiff to go into possession.